UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:05 CR 320 HEA |
| | ) | DDN |
| DONALD RADOSH, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on August 1, 2005.

The government has moved for a pretrial determination of the admissibility of statements (Doc. 17), and defendant Donald Radosh has moved to suppress evidence and statements (Doc. 16). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. During the week of March 27, 2005, a confidential informant (CI) told Metropolitan St. Louis Police Officer Martinous Walls that he had personally seen a white male, known as "Don," package and sell narcotics and illegal firearms from the residence of 7619 Virginia in the City of St. Louis. The CI also said that "Don" occasionally goes to the parking lot at 3740 South Grand to do his transactions and identified the residence at 7619 Virginia as "Don's" home. This CI had previously provided Officer Walls with reliable information that led to arrests and seizures, and information that led to cases then pending in Missouri state courts.

2. For periods of time on March 28, 29, and 30, 2005, Officers Walls, Lyndon Cornell, and Mathew Wiedemann, surreptitiously watched 7619 Virginia. During these observations, from the CI's description the officers were able to identify "Don" as Donald Radosh. The officers also saw approximately ten different unidentified individuals go into the residence at different times; all such visitors stayed for less than

3 minutes and then left. Similar to the visitors, Radosh was seen entering the residence approximately ten times, staying for a couple of minutes, then leaving the residence. At no time during these observations did the officers see anyone carrying a package or what looked to be narcotics or firearms.

3. During one period of surveillance, the officers followed Radosh as he drove his car to an empty lot at 3740 South Grand. Radosh stayed at the parking lot for approximately two minutes during which he met an unidentified person. While no drugs, firearms, or currency were seen, the officers believed that this meeting involved a drug transaction.

4. On March 31, 2005, Officer Walls applied for a search warrant for 7619 Virginia and submitted his written, sworn affidavit in support. In the affidavit, Officer Walls stated that his confidential informant had told him that Don had possessed powder cocaine, marijuana, and illegal firearms inside 7619 Virginia within the past 24 hours. The affidavit stated that the informant had provided prior information about illegal drug sales which resulted in gun and drug law arrests and seizures of narcotics and weapons, and resulted in the prosecution of several cases in the Missouri circuit court. Gov. Ex. 2. On March 31, 2005, at 11:25 a.m., a Missouri circuit judge issued a search warrant for 7619 Virginia to search for marijuana, cocaine, cocaine base, records of illicit drug sales, firearms, currency, and drug paraphernalia. Gov. Ex. 1.

5. On March 31, 2005, at 3:15 p.m., Officer Wiedemann and other officers arrived at 7619 Virginia to execute the search warrant. When they pulled up in front, they saw Donald Radosh standing on the front porch. The officers told him they were there to serve the search warrant. The officers entered the home, performed a protective sweep for other people in the house, and then searched the entire residence. During the search, Radosh was handcuffed and sat in the front room, which was also his bedroom. Photographs were taken of the scene. After approximately 15 minutes into the search, Officer Walls found a loaded .22 caliber pistol in the dresser drawer of Radosh's room. Later, the officers found a double-barreled sawed-off shotgun in the kitchen. The officers found two more guns in a gun-safe after unlocking the safe with a key found inside the bedroom closet. No drugs or currency were seized. The entire search lasted no more than one hour.

6. After the search, Officer Walls formally arrested Radosh. He then advised him of his constitutional rights to remain silent and to counsel by reading them out loud to Radosh from a card. Radosh did not appear to be intoxicated or under the influence of drugs or alcohol. He stated that he understood what Officer Walls said. Radosh was not subjected to physical abuse during the arrest.

7. The officers told Radosh that they found a .22 caliber pistol in his room. Thereafter Radosh spontaneously and voluntarily stated that the guns in the house belonged to his father and that they were for his protection.

## DISCUSSION

The motion to suppress should be denied. First, the search warrant was properly issued and executed. The issue before this court when reviewing the legal sufficiency of the basis for the issuance of a search warrant is whether the issuing judge had a substantial basis for concluding that probable cause existed for the issuance of the warrant. United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994); United States v. Martin, 866 F.2d 972, 976 (8th Cir. 1989) (citing Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).

Probable cause means a "fair probability that . . . evidence of a crime will be found in a particular place," given the circumstances set forth in the affidavit. United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999)(quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Thus, the issuing magistrate must decide whether, in the totality of the circumstances described in the officer's affidavit, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. United States v. Coleman, 349 F.3d 1077, 1083 (8th Cir. 2003).

In this case, the officer's affidavit informed the issuing judge that a confidential informant, known to be reliable to the officer because of prior information being used to successfully prosecute offenders, said he or she had personally seen "Don" possess narcotics and weapons inside the 7619 Virginia apartment residence and conduct hand-to-hand transactions at a vacant lot. The affidavit also recounted that the informant had recently been inside the residence and seen defendant prepare powder cocaine, marijuana, and firearms for sale.

This information was corroborated by subsequent police observation of short term visitors to 7619 Virginia and one observation of a hand-to-hand transaction at the vacant lot. The undersigned concludes that the issuing judge had a substantial basis for finding that probable cause existed that narcotics, firearms, and related evidence would be found in a search of 7619 Virginia. Thus, the search warrant was lawfully issued. The items seized from the residence should not be suppressed.

The statements made by defendant should not be suppressed. When the officers first approached defendant to execute the search warrant, they had probable cause to arrest him without a warrant, because the information provided by the reliable informant was sufficient to cause a reasonable person to believe that defendant had committed and was then committing drug law and gun law violations. Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Nevils, 897 F.2d 300, 309 (8th Cir.), cert. denied, 498 U.S. 844 (1990) (probable cause can be found in the information set forth in a search warrant affidavit). However, the officers merely detained him while they executed the warrant by searching the residence, which they were authorized to do in any event. The occupant of the place to be searched pursuant to a search warrant may be detained during the execution of the search warrant. Michigan v. Summers, 452 U.S. 692, 702-04 (1981). The discovery and seizure of the firearms increased the probable cause to arrest and the officers then formally placed defendant under arrest.

After the arrest, Officer Walls advised defendant of his constitutional rights to remain silent and to counsel, as prescribed by Miranda v. Arizona, 384 U.S. 436 (1966). Further, his statements, which were spontaneous and not the results of interrogation, were voluntary because they are not the result of government overreaching, such as coercion, deception, or intimidation, regardless of the mental condition of the defendant. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986); United States v. Goudreau, 854 F.2d 1097, 1099 (8th Cir. 1988).

For these reasons,

**IT IS HEREBY ORDERED** that the motion of the government for a pretrial determination of the admissibility of defendant's statements (Doc. 17) is denied as moot.

**IT IS HEREBY RECOMMENDED** that the motion of defendant to suppress evidence and statements (Doc. 16) be denied.

The parties are advised they have ten (10) days to file written objections to this Order and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

### ORDER SETTING TRIAL DATE

As directed by the District Judge, this matter is set for a jury trial on the docket commencing October 3, 2005, at 9:30 a.m.

/s/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 11, 2005.